UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RAJIB DAS,

                Plaintiff

    -against-

METROPOLITAN TRANSPORTATION
AUTHORITY and ARMENGOL VIERA

                Défendant

------------------------------------------------------------------x

Civil Action No:

COMPLAINT

JURY TRIAL DEMANDED

      Plaintiff Rajib Das ("Das"), by and through his attorneys Sacco & Fillas, LLP, as and for his complaint against Defendants Metropolitan Transportation Authority ("MTA") and Armengol Viera ("Viera"), collectively referred to herein as ("Defendants"), states and alleges as follows:

### NATURE OF THE ACTION

      1.     Plaintiff, a qualified individual with a disability, has worked for the MTA as a Special Inspector for nearly ten years, starting in April 2016. Throughout his employment with the MTA, Defendants discriminated against Plaintiff because of Plaintiff's disability and race, violating the New York State Human Rights Law, NYS Executive Law § 296, et seq. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code § 8-107(1), et seq. ("NYCHRL") and the Family and Medical Leave Act ("FMLA")

      2.     Defendant MTA did not accommodate the Plaintiff's disability and tried to use his need for disability-related leave as a reason to deny him a promotion for which he was qualified. At the same time, they allowed a hostile work environment to develop among staff because of his disability, when they allowed their employees, including Plaintiff's supervisor, to disparage him about his disability over an employee group chat.

1

3.	Finally, Defendant MTA discriminated against Plaintiff because of his race by assigning white employees to more desirable posts (e.g., posts that were indoors, had amenities, or additional safety officers) while assigning employees of color, including Plaintiff, to remote or exposed posts that were outdoors and did not have any amenities.

## JURISDICTION AND VENUE

4.	The Court has jurisdiction over this action under 28 U.S.C. § 1332 on diversity grounds.

5.	Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this cause of action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

6.	Plaintiff, a disabled male, is of South Asian ancestry and is a resident of the State of New Jersey.

7.	Plaintiff was diagnosed with gout in 2014.

8.	Gout is a common and complex form of arthritis recognized by the NYSHRL and NYCHRL as a qualified disability.

9.	Plaintiff was diagnosed with Lichen planus, a chronic inflammatory condition affecting the skin, mouth, and other mucous membranes.

10.	Lichen planus is a chronic inflammatory skin condition affecting the skin and mucosal surfaces, recognized by the NYSHRL and NYCHRL as a qualified disability.

11.	Defendant MTA is a public benefit corporation created and operated by New York State.

12. At all relevant times herein, Defendant MTA has the power to, inter alia, hire and fire employees, establish and pay their wages, set their work schedules, determine their job duties and responsibilities, maintain their employment records~ and/or otherwise have the authority to alter the terms and conditions of the employees' employment, including Plaintiff.

## FACTUAL ALLEGATIONS

13. In 2014, Plaintiff was first diagnosed with Gout.

14. Gout affects Plaintiff's mobility and makes standing for prolonged periods painful.

15. Plaintiff began working for the MTA as a Special Inspector starting on July 18, 2016.

16. In 2020, Plaintiff was first diagnosed with Lichen planus.

17. In October of 2021, Special Inspector Supervisor ("SIS") Andrew Kennedy ("Kennedy") offered Plaintiff a position working at the Security Initiative Group (SIG).

18. Kennedy stated that this position will be great for Plaintiff since he has gout, which will help keep him off his feet.

19. Kennedy asked Plaintiff to write a memorandum indicating his interest, which he did.

20. On or about February 2022, Plaintiff learned that the SIG unit would be downsized and he would have to be transferred.

21. On March 13, 2022, Defendant MTA transferred Plaintiff to the Video Retrieval Unit ("VRU") due to downsizing.

22. When Defendant MTA transferred Plaintiff to the VRU, they promised Plaintiff would be able to take the company vehicle directly to the posts, which was not later honored by Defendants.

23. On April 26, 2022, Plaintiff sent a special accommodation request to SIS Pallas Garvin, who was Plaintiff's immediate supervisor at the time, and Superintendent O'Leary

24. Defendant MTA did not respond to Plaintiff's accommodation request.

25. One month later, on May 24, 2022, Plaintiff again reached out to Superintendent O'Leary seeking an update on his requested accommodation.

26. O'Leary told Plaintiff that if a position opens on Staten Island, he will let Plaintiff know.

27. After Defendant MTA denied Plaintiff's requested accommodation, he tore a ligament in his foot.

28. Gout can increase the risk of torn ligaments in the foot over time due to the urate crystals and inflammatory damage they cause.

29. Chronic inflammation and crystal deposits can weaken the ligaments, and in some cases, tophi (urate crystal deposits) can infiltrate and rupture ligaments.

30. Had Defendant MTA accommodated Plaintiffs' reasonable request to be transferred to a less physically demanding position, including Plaintiff's request for office work, he would not have further aggravated his foot injury, tearing a ligament in his foot.

31. As a result of Defendant MTA's refusal to accommodate Plaintiff's reasonable request for office work, he was forced to take workers' compensation leave for a year as a result of the torn ligament in his foot.

32. Plaintiff returned from workers' compensation leave in June 2023.

33. When Plaintiff returned from leave, SIS Kennedy and Chief Logan asked him for his medical documents and requested that Plaintiff obtain a medical note stating he was cleared for duties.

34. Plaintiff also spoke with SIS Kennedy over the phone and informed him that he would like to transfer due to his gout and lichen planus conditions.

35. In response, Kennedy informed Plaintiff that "he needed to get it together" in response to his physical limitations, "or transit will fire you."

36. Plaintiff began to fear he would be terminated for requesting accommodation because of his disability.

37. On July 19, 2023, Plaintiff submitted a medical and family hardship, asking for reassignment to a less physically demanding position.

38. Again, Defendant MTA ignored Plaintiff's accommodation request.

39. On August 25, 2023, Plaintiffs' partner Yolanda Wiggins ("Wiggins") was scheduled to work overtime after SIS Kennedy directly offered her the opportunity to work overtime via text message.

40. After Wiggins had to cancel her overtime shift because of a required appearance in court, Plaintiff was never offered to work that same overtime shift.

41. On September 1, 2023, Wiggins informed Plaintiff that SIS Kennedy was out to get him.

42. On October 28, 2023, Kennedy texted Plaintiff to inform him that Plaintiff would be working on administrative tasks and specifically informed Plaintiff what he needed to do.

43. Upon information and belief, after Plaintiff consulted with his coworkers, he learned that Kennedy did not do this with other similarly situated non-disabled employees, only with Plaintiff.

44. Plaintiff also learned that Kennedy only required Plaintiff to include what he had completed throughout his shift as part of his off-duty report, while similarly situated non-disabled employees did not.

45. On November 5, 2023, Wiggins was offered to work overtime hours, and Plaintiff was not.

46. Upon information and belief, emails seeking employees to work overtime shifts were sent to all employees but Plaintiff.

47. During his employment, Plaintiff was a member of a group text chat with other MTA Employees, including his supervisor.

48. On January 1, 2024, a co-worker named Thomas Fernia sent a message to the group chat mocking Plaintiff's disability. The text message read "Year of the Gout," with a wiggling toe emoji.

49. On January 17, 2024, Plaintiff again submitted a medical and family hardship, asking for reassignment to a less physically demanding position to SIS Kennedy.

50. Shortly thereafter, Plaintiff again reached out to Supervisor Kennedy and Superintendent Billy Oleary regarding a transfer to Staten Island (Castleton Depot) due to his medical condition and again received no response.

51. At one point, Plaintiffs' co-worker Radokia Marrero informed Plaintiff that he was blacklisted "downtown." Downtown refers to the MTA's leadership working at its headquarters.

52. On February 24, 2024, Plaintiff filed a hostile work environment claim regarding his partner, Wiggins, and informed Kennedy of such.

53. Since there was no overnight supervisor, while working overnight with Wiggins, Plaintiff would do all the work, and his partner would not assist.

54. Plaintiff informed Kennedy about the hostile and toxic work environment.

55. Shortly thereafter, on March 31, 2024, MTA transferred Plaintiff to Staten Island, but only after he complained about a hostile work environment created by his former partner and not because of his Gout Diagnosis.

56. Even though MTA transferred Plaintiff, his new assignment did not accommodate his gout diagnosis.

57. When Plaintiff began working in Staten Island, Armengol discriminated against Plaintiff because of his race.

58. Armengol would assign White employees more desirable posts (e.g., St. George Ferry Terminal), which had more favorable amenities for MTA employees, including but not limited to indoor areas, bathrooms, and security officers on duty.

59. Conversely, employees of color, like Plaintiff, were assigned to remote locations without bathrooms and security.

60. Additionally, when MTA workers had to work undercover, White workers were permitted to remain in uniform, while similarly situated non-white workers were forced to work in street clothes.

61. MTA also denied Plaintiff the ability to work overtime, as non-disabled workers with less seniority would receive direct text messages offering them overtime hours that Plaintiff did not receive.

62. In May of 2025, Plaintiff went on Workers' compensation leave after an incident where a customer spat in Plaintiff's face.

63. Plaintiff currently remains on Worker's compensation leave and plans to return to work on or about May 2026.

64. When Plaintiff returns to work in May of 2026, he will again return to a position that does not accommodate his gout diagnosis.

## CONTINUING VIOLATIONS DOCTRINE

65. Plaintiff alleges that MTA's refusal to accommodate his disability in April 2022, along with the subsequent torn ligament resulting from their failure to provide accommodation, remains actionable under the continuing violations doctrine.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Discrimination Based on Disability; Executive Law § 296(1)(a))

66. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. Executive Law § 296(1)(a) provides that "It shall be an unlawful discriminatory practice for an employer … because of an individual's … disability … to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

68. MTA discriminated against Plaintiff because of his disability in violation of Executive Law § 296(1)(a) by failing to accommodate his reasonable requests to be transferred to a less physically demanding position because of his Gout diagnosis.

69. At no time did MTA engage in a cooperative dialogue and/or interactive process with Plaintiff to ascertain if Plaintiff's requested accommodation was reasonable before denying Plaintiff's request.

70. MTA further discriminated against Plaintiff because of his disability when it denied him promotions on three separate occasions (March 2024, October 2024, and March 2025) that he was qualified for under the premise that he was on workers' compensation leave.

71. MTA's policy of denying its disabled employees the ability to transfer or apply for jobs while they are on workers' compensation denies disabled MTA employees a privilege of their employment.

72. MTA cannot unilaterally deny an employee's request for a job transfer solely because the employee is on workers' compensation leave.

73. MTA has a duty to engage in a cooperative dialogue and/or interactive process with disabled workers on workers' compensation leave to ascertain whether any reasonable accommodation would allow a disabled worker requesting a job transfer to return to work with an accommodation.

74. Worker's compensation leave is not a legitimate reason to deny Plaintiff a transfer or promotion.

75. MTA did not engage in an interactive process with Plaintiff to determine if any reasonable accommodation could enable Plaintiff to transfer to a new position and return to work..

76. MTA also discriminated against Plaintiff when it did not offer Plaintiff overtime, while similarly situated employers without disabilities would routinely receive text messages offering them to work overtime hours.

77. Based on the foregoing actions, Defendants discriminated against Plaintiff because of his disability in violation of Executive Law § 296(1)(a).

78. As a direct and proximate result of Defendants' discrimination in violation of Executive Law § 296(1)(a), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

79. As a direct and proximate result of Defendants discrimination in violation of Executive Law § 296(1)(a), Plaintiff is entitled to damages including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST ALL DEFENDANTS
<u>(Hostile Work Environment -- Disability; Executive Law § 296(1)(h))</u>**

80. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. Executive Law § 296(1)(h) provides that "For an employer … to subject any individual to harassment because of an individual's ..,.disability … is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment"

82. As a result of the Hostile Work Environment fostered by the MTA Plaintiff's co-workers and supervisors, Plaintiff was and is continually and openly harassed because of his Gout diagnosis.

83. Plaintiff's coworkers made derogatory comments over group chats and in person.

84. This culminated with SIS Kennedy telling Plaintiff that "he needed to get it together" in response to his physical limitations, "or transit will fire you."

85. Plaintiff fears that, upon returning to work following his current workers' compensation claim, he will again be subjected to harassment because of his Gout.

86. Based on the foregoing actions, Defendants created a hostile work environment because of Plaintiff's disability in violation of Executive Law § 296(1)(h).

87. As a direct and proximate result of Defendants' hostile work environment in violation of Executive Law § 296(1)(h), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

88. As a direct and proximate result of Defendants hostile work environment in violation of Executive Law § 296(1)(h), Plaintiff is entitled to damages including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Discrimination Based on Disability; N.Y.C. Admin. Code § 8-107 (1)(a))

89. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. N.Y.C. Admin. Code § 8-107 (1)(a) provides that "It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived… disability… To discriminate against such person in compensation or in terms, conditions or privileges of employment."

91. At no time did MTA engage in a cooperative dialogue and/or interactive process with Plaintiff to ascertain if Plaintiff's requested accommodation was reasonable before denying Plaintiff's request.

92. MTA further discriminated against Plaintiff because of his disability when it denied him promotions on three separate occasions (March 2024, October 2024, and March 2025) that he was qualified for under the premise that he was on workers' compensation leave.

93. MTA's policy of denying its disabled employees the ability to transfer or apply for jobs while they are on workers' compensation denies disabled MTA employees a privilege of their employment.

94. MTA cannot unilaterally deny an employee's request for a job transfer solely because the employee is on workers' compensation leave.

95. MTA has a duty to engage in a cooperative dialogue and/or interactive process with disabled workers on workers' compensation leave to ascertain whether any reasonable accommodation would allow a disabled worker requesting a job transfer or promotion to return to work with an accommodation.

96. Worker's compensation leave is not a legitimate reason to deny Plaintiff a transfer or promotion.

97. MTA did not engage in an interactive process with Plaintiff to determine if any reasonable accommodation could enable Plaintiff to transfer to a new position and return to work.

98. MTA also discriminated against Plaintiff when it did not offer Plaintiff overtime, while similarly situated employers without disabilities would routinely receive text messages offering them to work overtime hours.

99. Based on the foregoing actions, Defendants discriminated against Plaintiff because of his disability in violation of N.Y.C. Admin. Code § 8-107 (1)(a).

100. As a direct and proximate result of Defendants' discrimination in violation of N.Y.C. Admin. Code § 8-107 (1)(a), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

101. As a direct and proximate result of Defendants' discrimination in violation of N.Y.C. Admin. Code § 8-107 (1)(a), Plaintiff is entitled to damages, including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees, and costs of this action, and pre-judgment interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Hostile Work Environment -- Disability; N.Y.C. Admin. Code § 8-107 )

102. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

103. MTA created a hostile work environment by ignoring Plaintiff's requests for accommodation of his disability in violation of the N.Y.C. Admin. Code § 8-107 by failing to accommodate his reasonable requests to be transferred to a less physically demanding position because of his Gout diagnosis.

104. As a result of the Hostile Work Environment fostered by the MTA Plaintiff's co-workers and supervisors, Plaintiff was and is continually and openly harassed because of his Gout diagnosis.

105. Plaintiff's coworkers made derogatory comments over group chats and in person.

106. This culminated with SIS Kennedy telling Plaintiff that "he needed to get it together" in response to his physical limitations, "or transit will fire you."

107. Plaintiff fears that, upon returning to work following his current workers' compensation claim, he will again be subjected to harassment because of his Gout.

108. Based on the foregoing actions, Defendants create a hostile work environment in violation of N.Y.C. Admin. Code § 8-107.

109. As a direct and proximate result of Defendants' hostile work environment in violation of N.Y.C. Admin. Code § 8-107, Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

110. As a direct and proximate result of Defendants hostile work environment in violation of N.Y.C. Admin. Code § 8-107, Plaintiff is entitled to damages including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (FMLA RETALIATION)

111. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein fully at length.

112. The FMLA entitles eligible employees of covered employers to take unpaid job-protected medical leave for specified medical reasons or to care for a family member with a serious health condition for up to twelve weeks per year, with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave.

113. [a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. § 825.220(c)

114. At all relevant times herein, Plaintiff worked for at least 1,250 hours during the twelve months immediately preceding his requested leave, making him eligible for FMLA Leave.

115. As a public sector employer, the MTA is subject to the obligations imposed by the FMLA.

116. Plaintiff engaged in statutorily protected activity when he requested leave to care for his foot injury.

117. Defendant MTA retaliated against Plaintiff for taking leave related to his foot injury by denying Plaintiff the ability to work overtime hours, while similarly situated non-disabled employees were permitted to work overtime.

118. Defendant MTA further retaliated against Plaintiff by denying him the ability to transfer or receive a promotion on three separate occasions (March 2024, October 2024, and March 2025) after he took FMLA leave to care for a foot injury.

119. Based on the foregoing actions, Defendants retaliated against Plaintiff because he took medical leave in violation of the FMLA.

120. As a direct and proximate result of Defendants' discrimination in violation of the FMLA, Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

121. As a direct result of Defendants' discriminatory acts, Plaintiff is entitled to damages including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**AS AND FOR A SIXTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
(Discrimination Based on Race; Executive Law § 296(1)(a))**

122. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein

123. Executive Law § 296(1 )(a) provides that "It shall be an unlawful discriminatory practice for an employer … because of an individual's … race … to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

124. Defendant MTA discriminated against Plaintiff because of his race based on the way Defendant assigned job duties to their employees.

125. White employees were assigned to more desirable posts (e.g., St. George Ferry Terminal) that had more favorable amenities for MTA employees, including, but not limited to, indoor areas, bathrooms, and security officers on duty.

126. Conversely, employees of color, like Plaintiff, were assigned to remote locations without bathrooms and security.

127. Additionally, when MTA workers had to work undercover, White workers were permitted to remain in uniform, while similarly situated non-white workers, including Plaintiff, were forced to work in street clothes.

128. Based on the foregoing actions, the MTA discriminated against Plaintiff based on his race in violation of the NYSHRL.

129. As a direct and proximate result of the MTA's discrimination in violation of the NYSHRL, Plaintiff suffered and continues to suffer monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

130. As a direct and proximate result of the MTA's discrimination in violation of the NYSHRL, Plaintiff suffered and continues to suffer severe mental anguish and emotional distress including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of

self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages.

131. As a direct and proximate result of Defendants' unlawful and discriminatory actions in violation of the NYSHRL, Plaintiff is entitled to punitive damages plus attorneys' fees and costs.

**AS AND FOR A SEVENTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
(Discrimination Based on Race; N.Y.C. Admin. Code § 8-107 (1)(a) )**

132. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

133. N.Y.C. Admin. Code § 8-107 (1)(a) provides that "It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived… race … To discriminate against such person in compensation or in terms, conditions or privileges of employment."

134. Defendant MTA discriminated against Plaintiff because of his race based on the way Defendant assigned job duties to their employees.

135. White employees were assigned to more desirable posts (e.g., St. George Ferry Terminal) that had more favorable amenities for MTA employees, including, but not limited to, indoor areas, bathrooms, and security officers on duty.

136. Conversely, employees of color, like Plaintiff, were assigned to remote locations without bathrooms and security.

137. Additionally, when MTA workers had to work undercover, White workers were permitted to remain in uniform, while similarly situated non-white workers, including Plaintiff, were forced to work in street clothes. Based on the foregoing actions, the MTA discriminated against Plaintiff on the basis of his race, in violation of the NYCHRL.

17

138. As a direct and proximate result of the MTA's discrimination in violation of the NYCHRL, Plaintiff suffered and continues to suffer monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

139. As a direct and proximate result of the MTA's discrimination in violation of the NYCHRL, Plaintiff suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages.

140. As a direct and proximate result of Defendants' unlawful and discriminatory actions in violation of the NYCHRL, Plaintiff is entitled to punitive damages plus attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant:

A. Awarding Plaintiff damages for all monetary losses, including, but not limited to, back pay, front pay, lost compensation, lost benefits, and reduced pension;

B. Awarding Plaintiff damages in an amount to be determined at trial plus interest to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his severe mental anguish and emotional distress, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering, and other physical and mental injuries;

C. Awarding Plaintiff punitive damages in an amount to be determined at trial;

D. Awarding Plaintiff costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

E. Declaring that Defendants engaged in unlawful employment practices prohibited by the laws of the State of New York.

Dated: Astoria, New York                    SACCO & FILLAS, LLP
January 29, 2026

*Scott William Clark*
_____
Scott William Clark Esq.
*Attorney for Plaintiff*
*Das Rajib*
3119 Newtown Ave, Seventh Floor
Astoria, New York 11102
Tel: 718- 269-1627
sclark@SaccoFillas.com

19